Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

Attorneys for Plaintiff JEFFREY KATZ
CHRIOPRACTIC, INC. and the alleged Class

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **JEFFREY KATZ CHIROPRACTIC, INC.**, a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**IBEAT, INC. D/B/A 100PLUS,** a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-02097-RS<br><br>**PLAINTIFF'S NOTICE OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: 3<br>Judge: Hon. Richard Seeborg<br>Complaint Filed: March 26, 2020 |

PLEASE TAKE NOTICE that at a date and time to be set by the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 3, Plaintiff Jeffrey Katz Chiropractic, Inc. ("Katz" or "Plaintiff") will appear and move this Court for an Order granting Plaintiff's Ex Parte Application for Temporary Restraining Order and Preliminary Injunction ("Application").

Plaintiff seeks an injunction enjoining Defendant iBeat, Inc. d/b/a 100Plus ("100Plus" or "Defendant") and its officers and employees, including Ryan Howard ("Howard") from

---
Ex Parte Application For Temporary Restraining Order And Preliminary Injunction

continuing to harass Plaintiff, its counsel, and its employees via harassing communications and online reviews. Further, Plaintiff requests that the Court set a hearing date and a briefing schedule to determine if a preliminary injunction is warranted.

The Application is based on this Notice of Ex Parte Application, the accompanying Memorandum in support of this Motion, the Declaration of Jeffrey Katz, the accompanying exhibits, and such other evidence that may be submitted at the hearing of this application.

Pursuant to L.R. 65-1(b) counsel for Plaintiff provided notice to Defendant May 14, 2020, by electronic mail and first class U.S. Mail. (*See* Certificate of Service.)

Dated: May 14, 2020

**JEFFREY KATZ CHRIPRACTIC**, **INC.**
individually and on behalf of all others similarly situated,

By: /s/ Taylor T. Smith
One of Plaintiff's Attorneys

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Taylor T. Smith*
tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Class*

*pro hac vice

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     Introduction**

On March 26, 2020, Plaintiff Jeffrey Katz Chiropractic, Inc. ("Katz" or "Plaintiff") filed its Class Action Complaint against Defendant iBeat, Inc. d/b/a 100 Plus ("100Plus" or "Defendant") alleging widespread violations of the Telephone Consumer Protection Act, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227, *et seq.* ("JFPA" or Act") (*See* Complaint, a true and accurate copy of which is attached hereto as Exhibit A.) Two days later, Plaintiff and its counsel received an email communication from Ryan Howard ("Howard"), founder and CEO of 100Plus. (*See* March 28th Email, a true and accurate copy of which is attached hereto as Exhibit B.). The March 28th Email laid bare the Defendant's (and Howard's) discontent with the lawsuit and his intent to damage Katz's reputation should it continue. Since that time, 100Plus, via Howard, has commenced a campaign of harassment—including repeated phones calls and damaging online reviews.

Consequently, Plaintiff respectfully requests that this Court enter a temporary restraining order ("TRO") and preliminary injunction to put an end to Defendant's persistent harassment. A review of each of the factors that a court must consider prior to enjoining a party weigh in favor of granting both. First, Plaintiff is likely to suffer irreparable harm absent an injunction.  Second, given that the request is narrowly tailored to only the harassing conduct, Plaintiff is likely to prevail on the merits of its harassment claim. Finally, the balance of equities and public interest also weigh in favor of granting an injunction.

As such, and as further explained below, this Court should issue a TRO and a preliminary injunction narrowly tailored to put an end to Defendant's continuous harassment.

**II.    Statement of Facts**

Defendant is a corporation with its principal place of business in San Francisco, California. (Compl. ¶ 2.) To market its products and services, Defendant sends unsolicited fax advertisements—a plain violation of the JFPA. (Compl. ¶ 6.) In sending the faxes at issue,

Ex Parte Application For Temporary Restraining Order And Preliminary Injunction
- 1 -

Defendant also fails to include proper opt-out language to permit the recipients to opt-out of the receipt of future faxes. (Compl. ¶ 27.)

In Katz's case, it received at least one fax advertisement from Defendant advertising its products and services. (Compl. ¶¶ 18-20.) Plaintiff never consented to receive faxes from Defendant. (Compl. ¶ 23.) Moreover, Plaintiff does not have any prior relationship with Defendant. (*Id.*) Further, given that the faxes lack the proper opt-out language, there is no reasonable means for Plaintiff to avoid receiving additional faxes. (Compl. ¶ 25.) To put an end to Defendant's serial violations of the JFPA, Plaintiff filed the instant case on March 26, 2020. (Dkt. 1.)

On March 28, 2020—two days after the filing of the Complaint—Plaintiff and its counsel received an email from Ryan Howard, the Defendant's founder and CEO. (*See* Ex. B; *see also* Declaration of Dr. Jeffrey Katz ("Katz Decl."), a true and accurate copy of which is attached hereto as Exhibit C.) Therein, Howard stated his belief that the instant case is without merit. (*See* Ex. B; Katz Decl. ¶ 4.) Howard continued by claiming, "patients frown upon their 'doctors' being litigious". (*See* Ex. B; Katz Decl. ¶ 5.) Howard then stated his intent to harass Plaintiff on a going-forward basis explaining,

> I am going to take it upon myself to ensure that the community knows about this behavior on Yelp, Facebook, Vitals.com, WebMD, and other review sites. Over the next week I will socialize your behavior to ensure that patients know what a low integrity person you are and I am confident that it will reflect in your overall scores.
>
> I have a lot of time on my hands with the nature of what's happening in the world and will enjoy trolling you and burning up your legal team's time. The first review has been posted publicly. If the lawsuit is dropped Monday, we'll consider not socializing this further. If not, I won't stop until everyone knows about your behavior and you have a one star review on each site.

(*See* Ex. B; Katz Decl. ¶ 6.)

Since the initial email, Howard has also placed harassing telephone calls to Plaintiff on numerous occasions. (Katz Decl. ¶ 7.) Plaintiff recalls that Howard called Plaintiff three times on April 10, 2020. (*Id.* ¶ 8.) Howard called Plaintiff again on May 6, 2020. (*Id.* ¶ 9.) While these

Ex Parte Application For Temporary Restraining Order And Preliminary Injunction
- 2 -

calls are known, it is likely that Howard has placed other unanswered calls. (*Id.* ¶ 10.) Unfortunately, Howard has also carried through with his threat to post negative reviews on social media platforms. (*Id.* ¶ 11.) In or around early April, Howard posted a negative review on Katz's Yelp.com business listing. (*Id.* ¶ 12.) Thereafter, Plaintiff was required to devote time and resources to removing the false post. (*Id.* ¶ 13.) Plaintiff relies upon sites, such as Yelp.com, to acquire new clientele. (*Id.* ¶ 14.) As such, a negative review can have a detrimental impact on Katz's reputation and ability to grow its business. On May 5, 2020, following the removal of the first review, Howard is believed to have posted the following additional negative Yelp.com reviews using sham aliases,

- Mr Katz spends his free time suing people and businesses for supposedly sending him faxes. This is a incredibly low integrity practice. Ask yourself if you really want to have a "doctor" who sues others for fun? Dr. Katz, doesn't your full-time job pay enough?

  You can find a list of his lawsuits here: t.ly/bOTS

- I went and saw "Dr." Katz for chronic back pain. During the visit he was rude and did not help my condition at all. Later, I sent him a fax with my medical record. He later filed a lawsuit against me for sending him a fax. I am on social security and it cost me $10,000 in attorney's fees to get it dismissed. What kind of person does this?

(*Id.* ¶ 15.)

Based on these facts and as explained below, the Court should find that a TRO and preliminary injunction are warranted here to put an end to Defendant's harassing behavior.

**III.   Argument**

"Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them." *United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828-MWF (MAAX), 2019 WL 6917918, at *11 (C.D. Cal. Oct. 17, 2019) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991)). In that regard, "a district court has the inherent power to issue an injunction against litigants who harass their opponents." *Yates v. Belli Deli*, No. C 07-01405 WHA, 2007 WL 2318923 (N.D. Cal. Aug. 13, 2007) (citing *DeLong v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir.1990)).

As an initial matter, while the First Amendment generally prohibits the government from restricting speech, "courts have made a distinction between communication and harassment." *United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828-MWF (MAAX), 2019 WL 6917918, at*6 (C.D. Cal. Oct. 17, 2019) (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005)). Where an injunction is narrowly tailored to prohibit only the harassing communications, courts have the power to issue an injunction. *See id.* (Enjoining a party's harassing behavior and explaining "even under the First Amendment, 'courts do have the power to enjoin harassing communication.'").

In considering whether a temporary restraining order and a preliminary injunction should be issued, courts must apply a four-factor test. *E. Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838, 854-55 (N.D. Cal. 2018). The party seeking the injunction must demonstrate: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of relief, (3) that the balances of equities tip in favor of the movant, and (4) that an injunction is in the public interest. *Se id.* at 855 (citation omitted) ("A plaintiff seeking either remedy "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). Ultimately, "[i]njunctive relief is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Id.* (citation omitted).

As explained below, Plaintiff's requested injunction is appropriate and warranted.

**A.     Plaintiff Is Likely To Succeed On The Merits.**

The first factor requires Plaintiff to demonstrate that it is likely to succeed on the merits of its claim. However, when the injunction is sought to restrain an opponent's harassing communications, the Court must inquire into the merits of the harassment claim. *See United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828-MWF (MAAX), 2019 WL 6917918, at *8 (C.D. Cal. Oct. 17, 2019) ("The parties treat this prong as dealing with the "merits" of

showing harassment, rather than the merits of the actual lawsuit. That is correct."); *Principe v. Curry*, No. 817CV00608JLSKESX, 2018 WL 1406912, at *2-3 (C.D. Cal. Jan. 3, 2018).

Here, Plaintiff relies upon Cal. Code Civ. Proc. § 527.6(a)(1), which permits an individual "who has suffered harassment" to "seek a temporary restraining order." Courts have found that Section 527.6 creates "'substantive rights against certain types of harassment,' allowing individuals to 'fil[e] a petition for orders' without a complaint." *Principe v. Curry*, No. 817CV00608JLSKESX, 2018 WL 1406912 (C.D. Cal. Jan. 3, 2018); *United Artists Corp.*, 2019 WL 6917918, at *7. When considering enjoining harassing conduct, courts apply the substance of the state law, but apply the federal procedural rules under Fed. R. Civ. P. 65. *See United Artists Corp.*, 2019 WL 6917918, at *7.

Under Section 527.6, "harassment" is defined to include "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." Cal. Code Civ. Proc. § 527.6(b)(3). "Course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email." Cal. Code Civ. Proc. § 527.6(b)(1). Finally, the "course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." Cal. Code Civ. Proc. § 527.6(b)(3).

Here, Defendant's actions constitute harassment within the meaning of Section 527.6. Howard, on behalf of 100Plus, continues to place telephone calls to Plaintiff without any legitimate purpose. Instead, the calls are placed solely to harass and annoy Plaintiff. Likewise, Howard's online reviews have been posted solely to harm and diminish Plaintiff's public reputation. The Court need not look further than the March 28th Email to understanding 100Plus's intent. (*See* Ex. B.) Further, Howard's recent posts on May 5, 2020 have shown that he

intends to continue posting negative reviews designed to harm Plaintiff's reputation. Worse yet, it appears that Howard has taken to creating sham profiles to post the negative reviews. In short, Howard's conduct serves no legitimate purpose and is directed at Plaintiff solely to harass.

Moreover, 100Plus's conduct would cause a reasonable person to suffer substantial emotional distress. Given that Plaintiff relies on online reviews to acquire new patients, Defendant's attempts to diminish its reputation have actual consequences. Here, Plaintiff has already spent time and resources to remove one of the false reviews. Further, the calls take up valuable time that Plaintiff and its staff could redirect towards its actual patients, a legitimate purpose. To date, Plaintiff has already endured over a month of harassing communication with no end in sight. And Howard's March 28th email made clear that 100Plus "won't stop until everyone knows about your behavior and you have a one star review on each site." (Ex. B.) In short, the Court should step in and enjoin Defendant and its officers and employees, including Howard, from continued harassment. To be sure, courts have enjoined litigants who have similarly harassed their opponents. *See, e.g., United Artists Corp.*, 2019 WL 6917918; *see also Myart v. Taylor*, No. SA: 5:16-CV-736-DAE, 2016 WL 5376227, at *5 (W.D. Tex. Sept. 26, 2016).

Because Plaintiff is likely to succeed in showing that Defendant has engaged in harassing behavior, the Court should find that this factor weighs in favor of granting an injunction.

### B.     Absent An Injunction, Plaintiff Is Likely To Suffer Irreparable Harm.

This factor requires Plaintiff to establish that irreparable harm is likely to occur absent an injunction. *See E. Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838, 864-64 (N.D. Cal. 2018) (citing *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011)) (A party seeking an injunction "must establish that irreparable harm is likely, not just possible, in order to obtain a [TRO]."). The inquiry "focuses on 'whether the harm to Plaintiffs [i]s irreparable,' rather than 'the severity of the harm.'" *Id.* at 864 (citing *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014)). "There must be a 'sufficient causal connection' between the alleged irreparable harm and the activity to be enjoined[.]" *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries*

*Serv.*, 886 F.3d 803, 823 (9th Cir. 2018) (citation omitted).

In this case, irreparable harm is both actual and imminent. That is, 100Plus, via Howard, has already engaged in harassing behavior for over a month. Thus far, he has posted at least three negative reviews on Yelp.com and placed at least four known phone calls—including three calls on April 10, 2020 and one call on May 6, 2020. Further, Howard's March 28th email validates the conclusion that harassment is not likely to end. As Howard put it,

> I have a lot of time on my hands with the nature of what's happening in the world and will enjoy trolling you and burning up your legal team's time. The first review has been posted publicly. If the lawsuit is dropped Monday, we'll consider not socializing this further. If not, I won't stop until everyone knows about your behavior and you have a one star review on each site.

(*See* Ex. B.) Paired with his subsequent actions, it is clear that the harassment is unlikely to end absent the Court's intervention.

Additionally, Defendant's actions are not without a corresponding harm. That is, Plaintiff is a chiropractic center that relies, in part, on online reviews to acquire clients. False negative reviews, such as those posted by Howard, cause damage to Plaintiff's community reputation and ability to acquire new clients. Furthermore, these harms are irreparable. Even after a review is removed, nothing can be done to erase the impact that the overall rating or any particular review has had on a potential client. Likewise, nothing can be done to reverse the harms already suffered as a result of the calls—including annoyance, aggravation, and invasions of privacy. In short, a court order is warranted here. Defendant should not be permitted to continue to harass Plaintiff to the detriment of its own reputation and ability to conduct business.

Because Plaintiff has already suffered irreparable harm and has shown that he will likely suffer additional harms, this factor weighs strongly in favor of Plaintiff.

**C.     The Balance Of Equities Weigh In Favor Of Plaintiff.**

Next, Plaintiff "must establish that 'the balance of equities tips in [its] favor.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council,*

1  *Inc.*, 129 S. Ct. 365, 374 (2008)). In assessing the balance, the Court must balance the "interests
2  of all parties and weigh the damage to each." *Id.* (citation omitted). Where the injunction sought is
3  narrowly tailored to prohibit harassing communications, courts have found the balance of equities
4  weigh in favor of the movant. *See United Artists Corp. v. United Artist Studios LLC*, No. CV 19-
5  828-MWF (MAAX), 2019 WL 6917918, at *11 (C.D. Cal. Oct. 17, 2019) (granting a TRO and
6  preliminary injunction prohibiting continued harassment by the defendant); *see also Myart v.*
7  *Taylor*, No. SA: 5:16-CV-736-DAE, 2016 WL 5376227, at *5 (W.D. Tex. Sept. 26, 2016)
8  (granting an injunction and finding the balance of equities weigh in the movant's favor explaining
9  that "an injunction does not prevent Mr. Myart from expressing his views about the named
10 Defendants, so long as he does so in a manner that does not constitute personal harassment.").

11       Here, the balance of equities weighs in favor of Plaintiff. As explained above, Plaintiff has
12 already suffered harm as a result of Defendant's continued harassment. Further, absent a Court
13 Order the harassment is unlikely to cease. Conversely, an injunction would not cause Defendant
14 or its officers or employees any harm. That is, Defendant would be free to communicate with its
15 counsel, communicate with Plaintiff's counsel, and would be free to express its thoughts about
16 Plaintiff so long as it does so in a way that does not cause Plaintiff harassment or damage. The
17 only communications that would be prohibited are harassing communications and false online
18 posts. Further, enjoining Defendant's behavior would not affect its ability to defend itself in the
19 present action. Nor would it impede its ability to express its views so long as they are done in a
20 manner that does not constitute harassment. Because the injunction is narrowly tailored, the
21 balance of equities weighs in favor of granting the injunction.

22       **D.   An Injunction Would Be In The Public Interest**

23       An injunction is in the public interest if it would "help ensure the fair administration of
24 justice." *United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828-MWF (MAAX), 2019
25 WL 6917918, at *11 (C.D. Cal. Oct. 17, 2019). The issuance of an injunction here would promote
26 the interests of justice. That is, ensuring that Plaintiff and its counsel can fully participate in the
27
28

instant litigation free from the threat of continued harassing communications is in the public interest. *See id.* (finding an injunction is within the public interest and explaining that the injunction "would ensure that Flores and members of Plaintiff's legal team can fully participate in this lawsuit without the fear of receiving harassing communications from Schramm."). In short, this factor too weighs in favor of granting an injunction.

### E. A Security Bond Is Unnecessary In This Case.

Finally, Fed. R. Civ. P. 65 requires a movant seeking a preliminary injunction or a TRO to give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, the Court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted). In this case, Plaintiff seeks only to restrain Defendant from continuing to harass Plaintiff. It is hard to see what harm Defendant would suffer by the issuance of an injunction. Rather, the injunction is narrowly tailored to prevent intentional abuses of the judicial process and to facilitate the public interest. As such, Plaintiff respectfully requests that the Court waive the requirement of a bond.

## IV. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court enter a Temporary Restraining Order and Preliminary Injunction prohibiting Defendant, including its officers and employees, such as Howard, from continuing to direct threatening and harassing communication to Plaintiff during the pendency of this lawsuit.

Dated: May 14, 2020

**JEFFREY KATZ CHRIPRACTIC, INC.**
individually and on behalf of all others similarly situated,

By: /s/ Taylor T. Smith
One of Plaintiff's Attorneys

Rebecca Davis (SBN 271662)

Ex Parte Application For Temporary Restraining Order And Preliminary Injunction
- 9 -

rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Taylor T. Smith*
tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Class*

*pro hac vice