UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KATZ CHIROPRACTIC, INC., <br> Plaintiff, <br> v. <br> IBEAT, INC., <br> Defendant. | Case No. 20-cv-02097-RS <br><br> **ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION WITHOUT PREJUDICE** |

## I. INTRODUCTION

Plaintiff Jeffrey Katz Chiropractic, Inc. ("KCI") brings this putative class action against defendant iBeat, Inc. d/b/a 100 Plus ("100Plus") alleging violations of the Telephone Consumer Protection Act, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227, *et seq.* ("JFPA"). KCI allegedly received an unsolicited fax from 100Plus on June 20, 2019, which prompted this lawsuit. KCI now moves for a temporary restraining order ("TRO") and preliminary injunction to prohibit 100Plus and its officers and employees—namely its CEO, Ryan Howard—from engaging in harassing communications toward KCI. The matter was taken under submission pursuant to Civil Local Rule 7-1(b), and for the reasons set forth below, KCI's motion is denied without prejudice.

## II. BACKGROUND

KCI filed its Class Action Complaint against 100Plus on March 26, 2020 alleging repeated violations of the JFPA. Two days later, KCI and its counsel received an email from Howard, 100Plus's CEO. In the email, attached as Exhibit B to KCI's application, Howard first denies

that100Plus ever sent KCI an unsolicited fax.  He then expresses his openness to settling the case and declares that 100Plus is nonetheless insolvent.  In the final three paragraphs, Howard expresses his frustration with the lawsuit and criticizes Jeffrey Katz ("Katz") for being a serial JFPA plaintiff.  Howard writes:

> I believe these frivolous suits are inexcusable, especially [when] they come from a healthcare practitioner.  I know that patients frown upon their "doctors" being litigious and upon a quick Google search [it's] obvious that this isn't your first suit.
>
> I am going to take it upon myself to ensure that the community knows about this behavior on Yelp, Facebook, Vitals.com, WebMD, and other review sites.  Over the next week I will socialize your behavior to ensure that patients know what a low integrity person you are and I am confident that it will reflect in your overall scores.
>
> I have a lot of time on my hands with the nature of what's happening in the world and will enjoy trolling you and burning up your legal team's time.  The first review has been posted publicly.  If the lawsuit is dropped Monday, we'll consider not socializing this further.  If not, I won't stop until everyone knows about your behavior and you have a one star review on each site.

Ex parte Application for TRO and Preliminary Injunction (hereafter "Application"), Ex. B, Dkt. No. 15-2.

KCI further avers that, since sending this email, Howard has followed through on his threat and has commenced a "campaign of harassment—including repeated phone calls and damaging online reviews."  Application, Dkt. No. 15 at 3.  Specifically, KCI claims that Howard called Katz three times on April 10, 2020, once on May 6, 2020, and likely has placed other unanswered calls.  KCI also attributes multiple recent negative online reviews on Yelp.com to Howard, although they purport to be from other individuals.  These reviews share a consistent theme of criticizing Katz's character, and, most importantly, his habit of filing class action lawsuits whenever he receives an unwanted fax.  According to KCI, Howard's conduct has crossed the fine line from protected speech to harassment, which can and should be enjoined.

100Plus was asked to respond to KCI's motion.  On May 20, 2020, Howard

himself filed a response.[1]  Howard reiterates his claim that an employee at plaintiff's business consented to receiving the July 2019 fax that precipitated this lawsuit, and he again highlights Katz's and KCI's history of filing JFPA class actions.  Howard goes on to explain that his purportedly harassing phone calls were in fact earnest attempts to contact Katz to discuss a potential settlement.  Howard claims he only got through to Katz's receptionist and has never spoken to him directly.  This, according to Howard, undercuts KCI's cries of harassment.  Howard then admits to posting one "truthful, non-libelous, non-threatening" Yelp.com review explaining his experience with Katz; he denies KCI's allegations that he has published multiple other posts through "sham aliases."  Response to Pl's. Application for TRO, Dkt. No. 18 at 2.  Howard observes that Katz has myriad negative one-star reviews on Yelp.com.  According to Howard, the inference that all recent negative reviews must be Howard's doing is therefore a weak one.  At bottom, Howard claims his behavior does not constitute harassment sufficient to warrant court intervention, and he instead casts KCI's effort to silence his free speech as improper.

## III. LEGAL STANDARD

A TRO may be granted upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  The purpose of such an order, as a form of preliminary injunctive relief, is to

---

[1] KCI moves to strike Howard's response, claiming it was both untimely and improper.  A response had been requested by May 18, 2020, so the response was indeed filed two days late.  To disregard the filing on that ground, however, would be unduly harsh, given the preference to resolve motions on the merits and the fact that Howard at this point lacks the assistance of counsel.  Relatedly, KCI also moves to strike the response because this lawsuit is against 100Plus, a business entity which cannot appear except through counsel.  *See In re Highley*, 459 F.2d 554, 556 (9th Cir. 1972); Civil L.R. 3-9(b).  KCI argues that Howard's filing purports to be a response on behalf of 100Plus, which cannot appear or otherwise participate in this litigation through a non-lawyer like Howard.  The motion to strike is denied, because the injunction KCI seeks is primarily directed at Howard, the individual, as opposed to 100Plus, the entity.  Regardless, striking Howard's response would not change the result, as KCI has failed to meet its burden as explained below. 100Plus is advised, however, that moving forward it must appear through counsel, and informal filings from Howard will not be considered.

preserve the status quo and prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). A request for a TRO is evaluated by the same factors that generally apply to a preliminary injunction, *see Stuhlbarg Int'l. Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), and as a form of preliminary injunctive relief, a TRO is an "extraordinary remedy" that is "never granted as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Rather, to receive either a TRO or a preliminary injunction, the moving party bears the burden of demonstrating that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Alternatively, if the moving party can demonstrate the requisite likelihood of irreparable harm, and show that an injunction is in the public interest, a preliminary injunction may issue so long as there are serious questions going to the merits and the balance of hardships tips sharply in the moving party's favor. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

## IV. DISCUSSION

### A. Likelihood of Success on the Merits

#### 1. Standard for "Harassment"

In this context, the "merits" refers not to KCI's underlying JFPA claim but rather to KCI's ability to establish harassment that justifies injunctive relief. *See United Artists Corp. v. United Artist Studios, LLC*, No. 19-cv-828-MWF, 2019 WL 6917918, *8 (C.D. Cal. Oct. 17, 2019). When determining whether to enjoin a litigant's harassing conduct, federal district courts may look to state substantive law on harassment but apply the federal procedural rules under Federal Rule of Civil Procedure 65. *See, e.g.*, *United Artists Corp.*, 2019 WL 6917918, *7-8; *Volis v. City of Los Angeles Housing Authority*, No. 13-cv-01397-MMM, 2013 WL 12205684, *1 (C.D. Cal. July 22, 2013).

California Code of Civil Procedure § 527.6 defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific

person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purposes." § 527.6(b)(3). "Course of conduct" is defined as:

> [A] pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email.

*Id.* § 527.6(b)(1). Moreover, "[t]he course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." *Id.* § 527.6(b)(3).

Harassment so defined constitutes a narrow exception to the First Amendment's general prohibition against prior restraints and content-based restrictions on speech. *See id.* § 527.6(b)(1) (noting that "constitutionally protected activity is not included within the meaning of 'course of conduct'"). As the Fifth Circuit observed in a similar context:

> Courts have made a distinction between communication and harassment. *See, e.g.*, *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S. Ct. 684, 93 L.Ed. 834 (1949). The difference is one between free speech and conduct that may be proscribed. *See, e.g.*, *R.A.V. v. City of St. Paul*, 505 U.S. 377, 389, 112 S. Ct. 2538, 120 L.Ed. 2d 305 (1992). Although restrictions based upon conduct may incidentally restrict speech, the courts have found that such a restriction poses only a minimal burden on speech. . . . Thus, courts do have the power to enjoin harassing communication. *Lewis v. S.S. Baune*, 534 F.2d 1115, 1122 (5th Cir. 1976) (citations omitted). Courts also have the power to enjoin repeated invasions of privacy. *Id.*

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005) (concluding that the record of defendant's behavior justified an injunction but vacating district court's order after finding it "swept too broadly when it prohibited all communications between [defendant] and [plaintiff's] employees, staff or . . . counsel"). In short, despite the robust protections afforded by the First Amendment, a district court still possesses "the inherent power to issue an injunction against litigants who harass their opponents." *Yates v. Belli Deli*, No. 07-cv-01405 WHA, 2007 WL 2318923, *3 (N.D. Cal. Aug. 13, 2007) (citing *DeLong v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir.1990)).

### 2. Allegations against Howard

KCI has failed to meet its burden of establishing a likelihood of success on his claim that Howard has engaged in harassment as defined by the California Civil Code. Simply put, the allegations fail to rise to a level that would "cause a reasonable person substantial emotional distress." Cal. Civ. Code § 527.6(b)(3). Admittedly, Howard's letter to Katz shortly after the lawsuit threatening to "troll" him and "burn up" KCI's legal team's time evinces an improper purpose. That said, the allegations of Howard's subsequent conduct—four phone calls and three online reviews—would not cause a reasonable person substantial emotional distress.

Indeed, according to Howard, there were only two phone calls, both of which were for the legitimate purpose of discussing settlement. *Cf.* Cal. Civ. Code § 527.6(b)(3) (noting harassing conduct is that which "serves no legitimate purposes"). Howard also claims that he has written only one Yelp.com review, which is his right so long as it is a truthful review of his experience with plaintiff. Moreover, even if Howard were responsible for the two negative Yelp.com reviews attributed to others, these facts would still fall short of justifying injunctive relief.

In support of its motion, KCI relies heavily on *United Artists Corp.*, but the facts of that case only underscore why Howard's conduct is a far cry from the sort of harassment that would justify injunctive relief. In *United Artists Corp.*, there was a verbal and physical altercation at the courthouse in which the defendant allegedly uttered profanities at plaintiff's in-house counsel and then grabbed his wrist, causing him to drop his phone; this incident required the intervention of court security. 2019 WL 6917918, *1-2. Katz and Howard, by contract, have apparently never interacted directly except through email.

Likewise, the defendant in *United Artists Corp.* placed a phone call categorically different from the calls Howard allegedly placed. In *United Artists Corp.*, the defendant used a fake name to reach plaintiff's in-house counsel and, once connected, used profanities and veiled threats, including ending the call with "you've been warned." *Id.* at *3. In contrast, KCI does not contain any details about Howard's alleged phone calls, and Howard's explanation that these calls were to discuss settlement seems reasonable. A few phone calls from a *pro se* defendant to a plaintiff,

without more, would not cause a plaintiff "substantial emotional distress," particularly when those calls were fielded by a receptionist and the two never spoke directly.

Lastly, although phony, disparaging online reviews could, depending on their content and frequency, constitute harassment within the meaning of Cal. Civ. Code § 527.6, KCI fails to allege conduct rising to this level. According to KCI, there have been three negative reviews attributable to Howard, two of which KCI quotes, and one of which it succeeded in getting removed. These online reviews are no doubt annoying to Katz, since negative reviews could plausibly impact his business. However, only one of the quoted reviews is patently false, assuming it were drafted by Howard. *See* Application at 3. The other review quoted in KCI's motion merely expresses an opinion that Katz's penchant for lawsuits is "a low integrity practice." *Id.* Even if attributable to Howard, it would not obviously violate Yelp.com's terms of service and does not squarely fall within the definition of harassment.

Again, the comparison to *United Artists Corp.* is illustrative. There, the defendant sent plaintiff's in-house counsel multiple threatening emails and even referenced the names of his children. 2019 WL 6917918, *3. The defendant had created a website dedicated to humiliating plaintiff's counsel, and the defendant even threatened to bring unsubstantiated sexual harassment claims against him. *Id.* The defendant then called a more senior executive at plaintiff's counsel's company reiterating these allegations, and he even threatened to post billboards across Los Angeles to spread a similar message. *Id.* By contrast, three negative Yelp.com reviews, only one of which is demonstrably false, is materially different in kind.

In addition to *United Artists Corp.*, Katz cites *Myart v. Taylor*, No. 16-cv-736-DAE, 2016 WL 5376227, at *5 (W.D. Tex. Sept. 26, 2016), as another case in which a litigant "similarly harassed" an opponent. Application at 6. Again, however, the facts of *Myart* stand in stark contrast to the relatively benign allegations here. In *Myart*, the plaintiff "called [a city employee] at least forty times, calling him various racial epithets, using profane language, and on one occasion, threatening to come to the Risk Management offices and break out all the windows . . . ." 2016 WL 5376227, at *2. The plaintiff's disturbing behavior led the city to install

additional security, including electronic locks on certain office doors. *Id.* At least one employee expressed a fear for her physical safety, and the plaintiff's treating physician classified the plaintiff as having "a propensity for violence." *Id.* at *3. Katz's claim that Howard "similarly harassed" him and his business are therefore unpersuasive. KCI has thus failed to establish a likelihood of success on the merits of his harassment allegations.

### B. Other *Winter* Factors

Because Katz has failed to raise even "serious questions" going to the merits of his harassment allegations, the application for a temporary restraining order and motion for a preliminary injunction are denied without reaching the remaining *Winter* factors of irreparable harm, balance of equities, and public interest. *Alliance for the Wild Rockies*, 632 F.3d at 1131-32; *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013).

### V. CONCLUSION

For the reasons explained herein, KCI's motion is denied. This denial, however, is without prejudice, as it focuses only on the conduct identified thus far. Relatedly, Howard should not take this Order as an endorsement of his past conduct. Litigants should not engage in "trolling" behavior. Moreover, although Howard denied these allegations, he is advised that publishing phony reviews and then falsely denying this behavior in court filings could result in sanctions. *See* Fed. R. Civ. P. 11(b)(4), (c). Both parties are expected to conduct themselves in a civil, professional manner moving forward.

**IT IS SO ORDERED**.

Dated: May 26, 2020

RICHARD SEEBORG
United States District Judge